UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re WASHINGTON MUTUAL RESPA FEE                MEMORANDUM &
LITIGATION,                                      OPINION
                                                 02-CV-5944 (SMG)
-----------------------------------------------------------X    04-CV-4322 (SMG)
GOLD, S., U.S.M.J.:

On June 4, 2008, I entered an order granting the parties' motion for preliminary approval of a class action settlement and setting a fairness hearing for October 15, 2008. Shortly before the hearing, defendants advised the court that on September 25, 2008, the Office of Thrift Supervision, the federal agency responsible for regulating banks such as defendant Washington Mutual Bank ("WMB"), appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver for WMB for liquidation purposes pursuant to 12 U.S.C. § 1821(c)(6)(B). Docket Entry 153.[1] Accordingly, I granted the FDIC's motion to substitute for WMB as a party in these actions and granted the FDIC's motion for a stay pursuant to 12 U.S.C. § 1821(d)(12). *See* Order dated Oct. 15, 2008.

Plaintiffs' counsel and the FDIC subsequently reached a settlement agreement.[2] I have today entered an order approving the parties' Stipulation of Settlement and Dismissal ("Stipulation"), Docket Entry 185. The only issue remaining before me is plaintiffs' application for an award of attorney's fees and costs totaling $2,109,436.12, comprised of $2,000,000 in fees

---

[1] All docket entry citations can be found in the 02-CV-5944 docket.

[2] These cases are no longer being settled as class actions. The FDIC will, however, review all claims previously submitted by "class members" as part of the original settlement and will issue Receivership certificates in the amounts agreed to in the original settlement to those claimants who would have been entitled to receive settlement refunds.

and $109,436.12 in costs.[3]  Docket Entries 158-60, 186.  This memorandum sets forth my reasons for awarding $1,288,436.12 in fees and costs.

Courts in the Second Circuit determine the reasonableness of any fee award either by calculating the fee award as a percentage of the settlement or by calculating a "presumptively reasonable fee" by multiplying the hours reasonably expended by a reasonable hourly rate, *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008).[4]  *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (identifying various factors for courts to consider when calculating attorney's fees for class counsel, including the relationship between the amount of fees and the settlement amount).

Here, the total in fees and costs sought by counsel, $2,109,436.12, is a significant percentage of the settlement funds to be distributed to the class.  At the time that the parties entered into the original settlement, WMB had already paid a total of $4,093,990 in refunds to approximately 818,700 borrowers.  Settlement Agreement ¶ V.A.1, Weprin Decl. Ex. 1, Docket Entry 160.  During the time permitted for filing claims pursuant to the settlement, approximately 69,327 individuals filed timely claims seeking additional refunds as set forth in the settlement agreement.  Stipulation p.1.  The maximum amount that any claimant may be entitled to is $30.  Settlement Agreement ¶ V.B.  Valuing all claims at the maximum entitlement, and assuming all submitted claims are valid, a total of $2,079,810 may be paid to the claimants.  This most likely

---

[3] The Stipulation provides that the court shall determine a reasonable attorney fee award, which plaintiffs' counsel will then submit to the FDIC claims administrator for payment in the form of a Receivership certificate.  Stipulation ¶¶ 5, 11.

[4] The Court abandoned the term "lodestar" in determining a reasonable attorney's fee award.  *Arbor Hill*, 522 F.3d at 190.

overstates the actual total, however, because not all claims will be deemed valid and not all claimants will receive the maximum refund. *See* Pl. Mem. of L. in Support of Pl. Mot. for Final Approval of Class Action Settlement ("Pl. Mem."), Docket Entry 157, at 10 n.7 (noting that the original claims administrator concluded that over 8,000 claims were invalid); Settlement Agreement ¶ V.B (providing for varying refund amounts ranging from $2 to $30), ¶ V.E (noting that approximately 20 claimants would be entitled to only $2).

Assuming for the moment that the maximum possible recovery was obtained, and adding to it WMB's prior payment, the settlement could be valued at a total of as much as $6,173,800.[5] Adding the fees and costs sought by counsel yields a total settlement fund of $8,282,236.12. Class counsel's application for fees and costs thus seeks approximately 25% of the settlement's maximum value; obviously, the percentage would be higher if, as is likely, an amount less than an additional $2,079,810 is paid to the claimants.

An award of 25% of a settlement fund is within the range found reasonable by many courts, but courts have also warned against using 25% as a "benchmark" and frequently awarded smaller percentages. *See Goldberger*, 209 F.3d at 51-52 (recognizing that many courts award fees in the range of 25 to 30% of a settlement fund, but criticizing the use of a 25% benchmark as one that "could easily lead to routine windfalls where the recovered fund runs into the multi-millions," and affirming an attorney's fee award of 4% of the settlement); *Park v. The Thomson Corp.*, 2008 WL 4684232, at *7 (S.D.N.Y. Oct. 22, 2008) (stating that a fee award of 24% was within the range of recent fee awards, but on the high end of that range, and reducing award to

---

[5] I include WMB's voluntarily paid refunds of more than $4,000,000 because it appears that WMB began issuing refunds at least in part as a result of this action. Pl. Mem. at 7; Weprin Decl. ¶¶ 38, 39.

15% of the settlement); *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 87 (E.D.N.Y. 2002) (noting "the emerging trend within the Second Circuit of awarding attorneys considerably less than 30% of common funds in securities class actions" and reducing counsel's fee application from 33 1/3% to 12%); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, 2001 WL 709262, at *4 (S.D.N.Y. June 22, 2001) (concluding that an attorney's fee award of 30% of the settlement was "at the far end of the reasonableness spectrum" in a securities class action and reducing the award to 15%); *but see In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 587 and n.8 (S.D.N.Y. Sept. 10, 2008) (collecting cases approving attorney's fees in the range of 30 to 33 1/3% of a settlement).

The remaining *Goldberger* factors, 209 F.3d at 50, also support a reduction in the amount of plaintiffs' fee request. Although the "magnitude and complexities" of this litigation were substantial, this case was not as complicated as some securities and antitrust matters. Moreover, it seems the litigation risk was not particularly high. As noted above, WMB agreed to make refunds of $4,093,990 to approximately 818,700 borrowers even before a settlement agreement was reached, suggesting that plaintiffs' liability case was clear and compelling. This implies that the risk to plaintiffs of recovering zero was small, and that the risk that counsel would recover no fees at all was insubstantial.

In addition, although the quality of the representation was high, plaintiffs' most valuable claims were effectively dismissed as a result of the Second Circuit's decision in *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49 (2d Cir. 2004). Weprin Decl. ¶ 21. According to the Second Circuit's decision, class counsel here chose to bring claims to which the controlling statute "clearly and unambiguously does not extend." *Kruse*, 383 F.3d at 56.

4

*Goldberger* also directs courts to take into account public policy considerations. The circumstances of this case present a compelling public policy concern. At the time the class notice was sent out, WMB was apparently solvent, and class members were led to believe that they would receive the full amount of their valid claims under the settlement agreement. Since that time, WMB has been placed into receivership, and class members will now be awarded Receivership certificates in lieu of cash payments. Stipulation ¶ 11. As the court understands it, the value of these certificates will depend upon the amount of the assets available to satisfy claims and the amount of the claims made against those assets; the possibility that plaintiffs will be paid less than the face value of their valid claims – a possibility not articulated in the class notice or otherwise seriously contemplated prior to the receiver's appointment – now looms large. Assuming the assets will not be sufficient to pay all creditors full value, the amount of class counsel's claim against the limited assets marshaled by the receiver will affect the sum available to other creditors, including class members.

The record contains no information about whether the amounts at issue in this case are significant relative to the amounts involved in the receivership as a whole – WMB's total assets and liabilities – or whether the claims in this case will have an appreciable impact on the value of Receivership certificates. I assume the impact would be minimal. However, the appearance created by the competition over a limited fund between class members and class counsel suggests that counsel's fee request be given close scrutiny, particularly under the unique circumstances here, which changed after the class notice was distributed. My concerns in this regard are heightened by virtue of the contrast between the very small recoveries class members will enjoy and the large amount of fees counsel seek to recover. *Cf. Dreyfus Aggressive Growth Mut. Fund*

*Litig.*, 2001 WL 709262, at *4 n.11 (noting that often, "the net result of [securities fraud class actions] is that attorneys collect fortunes, investors recover pennies, and businesses are devastated").[6]

Turning my attention to the presumptively reasonable fee as a cross-check further supports the conclusion that a reduction in the amount of fees counsel seeks is warranted. Plaintiffs' attorneys calculate the presumptively reasonable fee as $1,499,009.25 by multiplying the 3,468.48 hours they spent litigating these actions over six years by their various hourly rates. Weprin Decl. ¶ 145. Although the total number of hours expended appears reasonable in light of the length and complexity of this action, some of those hours were spent developing and litigating the "overcharge" claims that were effectively dismissed by the Second Circuit's decision in *Kruse*. *Id.* ¶¶ 18-21.[7] Generally, a court should not award fees related to time spent on unsuccessful claims. *Hensley v. Eckerhart*, 461 U.S. 424, 434-37, 103 S. Ct. 1933, 1940-41 (1983) (recognizing the discretionary nature of awarding fees on unsuccessful claims but permitting such an award where the unsuccessful claims were intertwined with successful claims, nonfrivolous, and made in good faith).

Moreover, the hourly rates charged by counsel are high. Counsel seek reimbursement at

---

[6] Although the number of objectors was so small that I hesitate to read very much into the substance of their objections, I note that 14 of the 19 objections and opt-outs submitted to this court in connection with the original settlement criticized the amount of attorney's fees sought by class counsel as excessive. Weprin Decl. Exs. 8, 9.

[7] Because counsel did not provide any information about the amount of time expended on particular tasks, it is impossible to determine the number of hours devoted to the overcharge claims ultimately rejected by the Second Circuit.

hourly rates ranging from $250 to $800, with an average hourly rate of $432.18.[8]  Weprin Decl. ¶ 148.  For example, Barry A. Weprin of Milberg LLP, lead counsel on this action, expended approximately 338.50 hours at a rate of $735 an hour, for a total fee of $248,797.50.  *Id.* Ex. 12.  In addition, plaintiffs seek hourly rates for Milberg paraprofessionals ranging from $185 to $250.  *Id.*

The rates sought by counsel are higher than the rates usually awarded in this district to attorneys and paralegals.  *See, e.g.*, *Cheesecake Factory Assets Co. LLC v. Philadelphia Cheese Steak Factory Inc.*, 2008 WL 2510601, at *5 (E.D.N.Y. June 20, 2008) (finding no cases approving rates approaching $600 per hour for partners and that "recent case law in this circuit has not approved rates over $300 per hour for associates or $150 per hour for paralegals/clerks"); *Baruch v. Healthcare Receivable Mgmt., Inc.*, 2007 WL 3232090, at *5 (E.D.N.Y. Oct. 30, 2007) (noting that courts in the Eastern District of New York have awarded attorneys hourly rates ranging from $200 to $375).  Even courts reviewing fee applications in complex cases, including class actions, have not approved rates as high as counsel seeks here.  *See Pugach v. M & T Mortg. Corp.*, 564 F. Supp. 2d 153, 157-58 (E.D.N.Y. 2008) (collecting cases approving rates ranging from $350 to $595 per hour for partners); *but see Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 589 (using rates of up to $750 an hour for partners in calculating a lodestar cross-check).

In addition, plaintiffs seek to have a multiplier applied to their presumptively reasonable fee calculation.  "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on other 'less objective factors,'

---

[8] Dividing $1,499,009.25 by the number of hours expended (3,468.48) results in an hourly rate of $432.18.  Plaintiffs, however, seek a $2 million fee award which results in an hourly rate of $576.62.

7

such as the risk of the litigation and the performance of the attorneys." *Goldberger*, 209 F.3d at 46. Here, plaintiffs seek a multiplier of 1.33.[9] Weprin Decl. ¶ 168.

I see no basis to award a multiplier here for two reasons. First, as discussed above, WMB's voluntary, pre-settlement refunds suggest that the risk no recovery would be obtained was very small. Indeed, lead counsel for the class essentially acknowledges as much in his declaration, stating that the critical litigation risk in this case involved the amount, not the fact, of a recovery. *Id.* ¶ 86. Second, a significant amount of counsel's time was spent on claims that were effectively dismissed by the Second Circuit. Had counsel's expertise permitted them to anticipate the Circuit's ruling, this case might have been resolved before WMB was placed into receivership. Instead, the maximum recovery for any class member will be a trivial amount that will likely be further reduced as a result of WMB's financial difficulties.

In sum, the rates sought by counsel are high. In addition, public policy concerns – the small recoveries by individuals and the substantial risk that Receivership certificates will be redeemed at only a small fraction of their face value – warrant restraint in determining a reasonable fee. Taking all of these factors into consideration, I find that it is reasonable to award $1,179,000 in fees, and $109,436.12 in costs, the full amount of costs that counsel seeks. Although I have taken all of the factors discussed above into consideration, my "reasonable fee" cross-check analysis proceeds as follows: I reduce the total hours worked (3,468.48) by 15% as a rough estimate of time spent on claims precluded by *Kruse*, resulting in 2,948.2 hours, and I award an average hourly rate of $400, and reach a total of approximately $1,179,000. The total amount of fees and costs that I find reasonable, therefore, is $1,288,436.12. This amount is 17%

---

[9] $1,499,009.25 multiplied by 1.33 yields $1,993,682.30.

of the maximum total recovery – $1,288,436.12 divided by ($1,288,436.12 + $6,173,800) – a more reasonable percentage under all the relevant circumstances.

SO ORDERED.

                /s/
                STEVEN M. GOLD
                United States Magistrate Judge

Dated:  Brooklyn, New York
     March 17, 2009